O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY,<br><br>        Plaintiff,<br>    v.<br><br>DINO BAGLIONI and PAULINE<br>BAGLIONI,<br>        Defendants.<br>_____ | Case No. CV 11-06704 DDP (VBKx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>[Docket No. 9] |

Presently before the court is Plaintiff Allstate Insurance Company's Motion for a Preliminary Injunction ("Motion"). After reviewing the parties' moving papers and hearing oral argument, the court DENIES Plaintiff's Motion.

**I.   BACKGROUND**

Defendant Dino Baglioni carried homeowners' and umbrella insurance policies through Plaintiff Allstate Insurance Company. On September 4, 2010, Baglioni shot Marcos Dodson during a domestic altercation, rendering Dodson paraplegic. On February 14, 2011, Dodson filed suit against Baglioni in California state court ("Dodson Case"), for intentional torts and general negligence related to the altercation. (Mot. at 1-3.) Allstate defended Baglioni in the Dodson Case, "subject to a full reservation of

rights," including the right to seek reimbursement for settlement of uncovered claims. (Mot. Ex. 6 at 165-67.)

Allstate ultimately settled the Dodson Case for $2 million and filed this action to recover that amount from Baglioni, alleging that the underlying incident was not covered by his policies. Also, shortly after Allstate informed Baglioni of its intent to settle and seek reimbursement in the Dodson Case, Baglioni transferred title of his house to his mother, Defendant Pauline Baglioni. Allstate therefore amended its complaint in this action to allege fraudulent transfer of real property and add Pauline Baglioni as a defendant. (Mot. at 1-2.) Allstate then filed this Motion for Preliminary Injunction, seeking to (1) prevent Pauline Baglioni from transferring title to or encumbering the house, and (2) freeze the assets of Dino Baglioni, except for ordinary living expenses. (Mot. at ii.)

Allstate has not yet served Pauline Baglioni and therefore asks the court to now rule on its Motion only as to Dino Baglioni. (Reply at 2.) The court agrees and addresses only Allstate's request to freeze Dino Baglioni's unspecified assets.

**II. DISCUSSION**

Allstate brings its Motion for Preliminary Injunction under Rule 65 of the Federal Rules of Civil Procedure. As the Ninth Circuit has explained, Rule 65 "governs the *procedure* for the issuance of a preliminary injunction," but "the *authority* for the injunction . . . must arise (if at all) elsewhere." Reebok Int'l, Inc. v. Marnatech Enters., 970 F.2d 552, 558 (9th Cir. 1992). Rule 64 can provide such authority for an asset freeze, where state law or a federal statute permits the seizure. Allstate, however, cites

2

to no relevant state law or federal statute. Accordingly, the court declines to grant Allstate's asset freeze pursuant to Rule 64.

As Allstate correctly contends, an asset freeze may also be "authorized by the district court's inherent equitable power." Reebok, 970 F.2d at 558. A line of Supreme Court decisions discuss this authority, but also establish significant limits. See Deckert v. Independence Shares Corp., 311 U.S. 282 (1940); De Beers Consol. Mines, Ltd. v. United States, 325 U.S. 212 (1945); Grupo Mexicano de Desarrollo v. Alliance Bond Fund, 527 U.S. 308 (1999). The resulting legal framework depends, in part, on whether the underlying action seeks equitable relief or money damages. See In re Estate of Ferdinand Marcos, Human Rights Litig., 25 F.3d 1467, 1480 (9th Cir. 1994) (stating that a preliminary injunction freezing assets is "restricted to only *extraordinary* cases in which equitable relief is not sought"); Global Fin. & Leasing Inc. v. Lojy Air Co., No. CV 10-1369, 2011 WL 1626051, at *6-10 (D. Or. Apr. 28, 2011) (considering the nature of the claims and relief sought, to assess authority for an asset freeze).

Here, however, it is not necessary to delve into the nature of the relief sought. Even under the more lenient standard for claims seeking equitable relief, Allstate would have to show a "likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." Johnson v. Couturier, 572 F.3d 1067, 1085 (2009). Courts have construed this standard narrowly, only exercising their inherent authority to freeze assets where there is considerable evidence of likely asset dissipation. See, e.g., id. (CEO had already diverted nearly $35 million dollars

3

from an employee stock ownership plan to his personal bank account); <u>Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills</u>, 321 F.3d 878, 881 (9th Cir. 2003) (family had a history of fraudulent transfers, refused to disclose asset information in defiance of a court order, and reached a suspicious divorce settlement); <u>FTC v. Affordable Media, LLC</u>, 179 F.3d 1228, 1236-37 (9th Cir. 1999) (defendants had a "history of spiriting their commissions away to a Cook Islands trust," intentionally designed to frustrate judicial power to grant effective relief).

This approach is consistent with the Supreme Court's concern that, otherwise, "a plaintiff in any action for a judgment in tort or contract" might apply for an "injunction sequestrating his opponent's assets pending recovery and satisfaction of a judgment." <u>De Beers</u>, 325 U.S. at 222-23.  Certainly, every creditor would like to freeze its alleged debtor's assets before proving its claims, increasing leverage in settlement negotiations and the chances of collecting any judgment.  In the typical case, however, such an imposition on the alleged debtor and the courts is not justified.

This is a typical case.  In support of its requested freeze of Baglioni's assets, Allstate points only to the fact that Baglioni transferred title of his house to his mother, who had previously held title and continued to live in the house.  (Mot. at 4, 8.) Although quite possibly fraudulent, as this case will ultimately determine, this single transfer of a primary residence to a co-resident, immediate relative, and prior owner is not enough to demonstrate Baglioni is likely to dissipate any other assets he may have to avoid a potential judgment.

///

**III. CONCLUSION**

    For the foregoing reasons, the court DENIES Plaintiff's Motion for Preliminary Injunction.

IT IS SO ORDERED.

Dated: November 8, 2011

                              DEAN D. PREGERSON
                              United States District Judge