O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, | ) | Case No. CV 11-06704 DDP (VBKx) |
| Plaintiff, | ) ) | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| v. | ) ) | |
| DINO BAGLIONI and PAULINE BAGLIONI, | ) ) | [Docket No. 13] |
| Defendants. | ) ) ) | |

Presently before the court is Defendant Dino Baglioni's Motion to Dismiss Plaintiff's Complaint with Prejudice Pursuant to FRCP 12(b)(6) ("Motion").  Having reviewed the parties' moving papers and supplemental briefs, the court GRANTS the Motion.

**I.   BACKGROUND**

Defendant Dino Baglioni ("Baglioni") carried homeowners' and umbrella insurance policies through Plaintiff Allstate Insurance Company ("Allstate").  On September 4, 2010, Baglioni shot Marcos Dodson during a domestic altercation, rendering Dodson paraplegic. On February 14, 2011, Dodson filed suit against Baglioni in California state court ("Dodson Lawsuit"), for intentional torts and general negligence related to the altercation.  Allstate

1  defended Baglioni in the Lawsuit, "subject to a full reservation of
2  rights," including the right to seek reimbursement for settlement
3  of uncovered claims.   Pursuant to California Civil Code section
4  2860, Allstate also provided Baglioni the option to retain
5  independent counsel to defend him at Allstate's expense, given the
6  potential conflict of interest.  (1st Am. Compl. ("FAC") ¶¶ 7-10;
7  Pl.'s Mot. for Prelim. Inj. ("PI Mot."), Ex. 6 at 165-67.)
8  On July 13, 2011, "Dodson demanded that Allstate settle the Dodson
9  Lawsuit on behalf of Baglioni for $2 million, the combined
10  liability limits of Baglioni's Allstate Policies."  On August 3,
11  2011, Allstate sent a letter to Baglioni, informing him of
12  Allstate's intent to accept the settlement demand and then seek
13  reimbursement from Baglioni.  Allstate further informed Baglioni
14  that it would "proceed with this plan unless [by August 11, 2011,]
15  you state unequivocally in writing that if Allstate does not pay
16  Mr. Dodson $2,000,000, you will waive your right later to contend
17  that Allstate unreasonably failed to accept Mr. Dodson's offer to
18  settle."  (FAC ¶¶ 12-14; PI Mot., Ex. 8 at 172-74.)
19  Baglioni did not respond to Allstate's letter.  (FAC ¶ 15.)
20  Accordingly, Allstate settled the Dodson lawsuit and filed this
21  action on August 15, 2011, alleging that the underlying incident
22  was not covered by Baglioni's policies and seeking reimbursement of
23  the settlement amount.  Allstate filed its First Amended Complaint
24  on September 22, 2011, to add a dependent claim for fraudulent
25  transfer.  Baglioni filed this Motion to Dismiss on October 14,
26  2011.  On December 12, 2011, the court asked the parties to file
27  supplemental briefing, to address whether Allstate adequately
28  alleged meeting one of the requirements for a reimbursement action

1  under California law: making "an express offer to the insureds that

2  they may assume their own defense when the insurer and insureds

3  disagree whether to accept the proposed settlement." Blue Ridge

4  Ins. Co. v. Jacobsen, 25 Cal. 4th 489, 502 (2001).

5  **II.  LEGAL STANDARD**

6      Federal Rule of Civil Procedure 12(b)(6) requires courts to

7  dismiss claims for which no relief can be granted.  When

8  considering a 12(b)(6) motion, "all allegations of material fact

9  are accepted as true and should be construed in the light most

10 favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447

11 (9th Cir. 2000).  In Ashcroft v. Iqbal, the Supreme Court explained

12 that a court should first "identify[] pleadings that, because they

13 are no more than conclusions, are not entitled to the assumption of

14 truth." 129 S. Ct. 1937, 1950 (2009).  Next, the court should

15 identify the complaint's "well-pleaded factual allegations, . . .

16 assume their veracity and then determine whether they plausibly

17 give rise to an entitlement to relief." Id.; see also Moss v. U.S.

18 Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) ("In sum, for a

19 complaint to survive a motion to dismiss, the non-conclusory

20 factual content, and reasonable inferences from that content, must

21 be plausibly suggestive of a claim entitling the plaintiff to

22 relief."  (internal quotation marks omitted)).

23 **III. DISCUSSION**

24     In his Motion, Baglioni contends that Allstate "completely

25 fails to allege the facts" required for an insurance settlement

26 reimbursement claim under California law.  The court must therefore

27 determine whether Plaintiff adequately alleges meeting Blue Ridge's

28 three prerequisites for such a claim: "(1) a timely and express

3

1  reservation of rights; (2) an express notification to the insureds
2  of the insurer's intent to accept a proposed settlement offer; and
3  (3) an express offer to the insureds that they may assume their own
4  defense when the insurer and insureds disagree whether to accept
5  the proposed settlement."  25 Cal. 4th at 502.

6       Here, only the third requirement is at issue.  Allstate admits
7  that it did not expressly inform Balgioni that he could assume his
8  own defense.  In its Opposition to the Motion, however, Allstate
9  contends that: "Because Allstate was defending Baglioni at its
10 expense and did not seek to withdraw that defense, and because
11 Baglioni did not object to the proposed settlement, it was
12 unnecessary for Allstate to offer Baglioni to assume his own
13 defense."  In its Supplemental Brief, Allstate further explains its
14 failure to make such an offer, discussing Blue Ridge and two
15 district court decisions.

16      The court declines to create an exception to Blue Ridge's
17 requirement of an express offer to insureds to assume their own
18 defense.  Blue Ridge strikes a balance between the rights of
19 insurers and insureds, by allowing insurers to seek reimbursement
20 for settlements of uncovered claims, but also requiring insurers to
21 first offer to their insureds at least two options: 1) to agree to
22 the settlement - and thereby avoid incurring any legal costs, but
23 risk liability for reimbursement; or 2) to assume their own defense
24 - and thereby control the litigation and settlement, but also take
25 on the legal costs.  See id. at 502-05; id. at 506-07 (Mosk, J.,
26 concurring).  Further, as two Justices explain in a concurrence, an
27 insurer may, but is not required to, provide a third option: "to
28 allow the insured to refuse settlement and still retain the

4

1  insurance defense, but, consistent with that refusal, waive any

2  right to sue the insurance company for bad faith failure to refuse

3  a settlement." Id. at 506-07 (Mosk, J., concurring); see also id.

4  at 497, 504 (majority opinion) (discussing this potential insurer

5  liability).

6      Here, Allstate claims that it offered a similar but even "more

7  generous" choice to Baglioni - to refuse settlement and continue

8  receiving the insurer-provided defense, without even having to

9  "agree not to sue Allstate." (Supplemental Br. at 3.)  As an

10 initial matter, the court notes that Allstate's description of its

11 offer is false.  As mentioned, Allstate's letter stated that it

12 would accept the settlement unless Baglioni unequivocally waived in

13 writing his "right later to contend that Allstate unreasonably

14 failed to accept" the settlement.  In fact, Allstate repeatedly

15 emphasized this waiver requirement.  (See PI Mot., Ex. 8 at 173

16 ("Allstate will abide by your wishes, but only if you agree to

17 waive any right you might otherwise have to contend that Allstate

18 should have, but failed to, pay Mr. Dodson's claim."); id. ("If you

19 do not inform Allstate . . . that you will waive any rights you may

20 have to impose liability on Allstate for failing to accept the

21 settlement demand, Allstate will pay Mr. Dodson its policy limit

22 and then seek reimbursement from you . . . ."); id. at 174

23 (stating, above a signature line provided for Baglioni: "I, Dino

24 Baglioni, direct Allstate not to accept the $2,000,000 settlement

25 demand referred to above.  In exchange, I hereby waive all rights

26 to contend that Allstate unreasonably failed to accept that

27 settlement demand, and release all rights to seek damages from

28 Allstate based on its failure to accept that settlement demand.").)

1    However, Allstate's misrepresentation notwithstanding, the

2    court must still determine whether Allstate's actual offer - to

3    decline the settlement and continue providing a defense, contingent

4    on Baglioni waiving his right to later sue Allstate for failing to

5    settle - can excuse Allstate's failure to expressly offer Baglioni

6    the opportunity to assume his own defense.  As discussed, the <u>Blue</u>

7    <u>Ridge</u> concurrence does suggest Allstate's offer as a third option

8    that insurers might provide.  Further, two district court decisions

9    have found exceptions to <u>Blue Ridge</u>'s "assume your own defense"

10   requirement.  First, in <u>Progressive West Ins. Co. v. Dallo</u>, the

11   court held that "<u>Blue Ridge</u> does not require an insurer to . . .

12   make an express offer to the insureds that they assume their own

13   defense where the insurer and insured have demonstrated their

14   assent to settling an underlying case and have further agreed on

15   the amount of money appropriately applied to such settlement."

16   No. 08CV1003, 2007 WL 3225439, at *7 (S.D. Cal. Oct. 30, 2007).

17   Second, in <u>Phillips & Assocs., P.C. v. Navigators Ins. Co.</u>, the

18   court found that the insurer complied with <u>Blue Ridge</u> despite

19   allegedly failing to offer the insureds the opportunity to assume

20   their own defense, because: 1) the insurer had "reserved its rights

21   upon initially accepting the defense"; 2) the insureds "were aware

22   of this reservation well before settlement and did not disagree

23   with [the insurer] on whether to accept settlement"; and 3) the

24   insureds had previously signed a waiver of "their right to select

25   independent counsel."  764 F. Supp. 2d 1174, 1177 (D. Ariz. 2011).

26   This court is not persuaded that any of this precedent excuses

27   Allstate's failure here to comply with <u>Blue Ridge</u>'s explicit

28   requirement to offer its insured the opportunity to assume his own

1   defense.  First, as noted, the <u>Blue Ridge</u> concurrence provides a

2   "<u>third</u> option" - not a substitute for the other two options,

3   including the insured's option "to assume its own defense."  25

4   Cal. 4th at 506-07 (Mosk, J., concurring) (emphasis added).

5   Indeed, the <u>Blue Ridge</u> insurer had offered all three options in its

6   pre-settlement letter:

> Blue Ridge has evaluated and considers the settlement
> demand reasonable and thus, intends to pay the same under
> reservation of rights absent an unequivocal statement from
> you on behalf of the Jacobsens that they wish to either
> assume their defense or that they consider the case one of
> no liability and will not contend that Blue Ridge has an
> obligation to pay the settlement demand.

11  <u>Id.</u> at 496 (majority opinion) (internal quotation marks omitted);

12  <u>see also</u> <u>id.</u> at 504 ("By refusing to agree Blue Ridge could reserve

13  its right to reimbursement, or that the settlement offer was

14  unreasonable, or that they would assume their own defense, the

15  Jacobsens essentially demanded that Blue Ridge settle the case

16  without any recourse against the Jacobsens should the claim not be

17  covered.").

18      Second, the court finds that <u>Progressive</u>'s holding would not

19  apply to the facts here, as Baglioni's silence in response to

20  Allstate's letter did not sufficiently "demonstrate[ his] assent to

21  settl[e]."  2007 WL 3225439, at * 7.  In <u>Progressive</u>, to the

22  contrary, the insured had allegedly "encouraged" the insurer "to

23  unilaterally offer its policy limits" to "resolve th[e] case."  <u>Id.</u>

24  at *8.  Further, the court respectfully disagrees with

25  <u>Progressive</u>'s holding.  <u>Blue Ridge</u> sets forth three clear

26  requirements, with which insurers can easily comply by initially

27  reserving their rights, then sending a single letter - informing

28  the insureds of the insurer's intent to accept the settlement, and

7

1   offering the insureds the opportunity to assume their own defense.

2       To be fair, the Progressive court reasonably found that the

3   "assume your own defense" offer requirement was conditioned by the

4   language: "when the insurer and insureds disagree on whether to

5   accept the proposed settlement."  2007 WL 3225439, at * 7 (quoting

6   Blue Ridge, 25 Cal. 4th at 502) (emphasis added).  However, for a

7   numbers of reasons, this court concludes that it is more

8   appropriate to read the language as being part of the "express

9   offer," not a precondition.

10      First, Blue Ridge does not suggest any staggered timing for

11  its two notification requirements - whereas the Progressive holding

12  would require insurers to notify insureds of the settlement, but

13  potentially allow them to wait for an objection before telling the

14  insureds of their option to assume their own defense.  Indeed, on

15  the facts that Blue Ridge found sufficient for a reimbursement

16  claim, the insurer had met both requirements simultaneously:

17          On June 4, 1996, Blue Ridge informed the Jacobsens that it
            had determined the settlement offer was reasonable.  It
18          proposed to accept the demand under a reservation of its
            right to seek recovery of the settlement amount from the
19          Jacobsens.  It also gave the Jacobsens the option to assume
            their own defense if they found the settlement offer
20          unreasonable.

21  25 Cal. 4th at 494.  Also, consistent with Blue Ridge's policy of

22  providing fair options to the insured, it makes more sense to

23  require insurers to immediately inform insureds of their choices

24  with regard to settlement, instead of allowing insurers to wait for

25  an objection.  Otherwise, insureds might choose not to object to

26  the settlement, only because they did not know that they had the

27  option to assume their own defense.  Last, reading the "when the

28  insurer and insureds disagree" language as a precondition would

8

1   require courts to determine whether insureds had demonstrated their

2   assent or instead objected to settlement, in cases like this one.

3   The court declines to take this more difficult route - given what

4   could instead be interpreted as a simple, bright-line requirement -

5   unless the California courts expressly direct it to do so.

6       Similarly, the court respectfully disagrees with Phillips that

7   an initial reservation of rights by the insurer and waiver of

8   independent counsel by the insured can substitute for the required

9   "assume your own defense" offer.  Again, Blue Ridge itself provides

10  no exception to its three simple requirements.  See 25 Cal. 4th at

11  503 (holding that "if the insurer, as in this case, satisfies the

12  prerequisites noted above, it should be deemed to have an

13  implied-in-law right of reimbursement").  Further, Phillips'

14  holding appears to be contrary to the facts of Blue Ridge, where

15  the court imposed the "assume your own defense" requirement,

16  despite the insurer having initially reserved its rights and

17  offered independent counsel to its insureds.  See 25 Cal. 4th at

18  493.  As Baglioni notes, an insurer's initial offer to the insureds

19  to choose independent counsel - as required by section 2860, to

20  avoid potential conflicts - is not the same as later offering the

21  insureds the opportunity to entirely assume their own defense.

22      Finally, it is true, as Phillips notes, that Blue Ridge quotes

23  a California appellate case stating that "there was in fairness no

24  need for the insurer to offer the defense to the insured," when

25  "the insured knew from the oustet it might be responsible for

26  paying a judgment in the underlying action."  Blue Ridge, 25 Cal.

27  4th at 500-01 (quoting Golden Eagle Ins. Co. v. Foremost Ins. Co.,

28  20 Cal. App. 4th 1372, 1393 (1993)).  However, Blue Ridge prefaces

1  its extended discussion of prior cases, including this quote, by

2  noting that the court "may not agree with all of the reasoning" of

3  the cases, but simply finds them "useful in understanding" the

4  insurer's actions.  25 Cal. 4th at 498.  Further, as discussed,

5  Blue Ridge ultimately appears to reject Golden Eagle's statement,

6  by requiring not only an initial reservation of rights, but also

7  notice of intent to settle and an express offer to insureds to

8  assume their own defense.

9      Returning to the facts here, Allstate admittedly failed to

10  provide this express offer to Baglioni.  Instead, Allstate offered

11  to reject the settlement and continue defending Baglioni, but only

12  if he waived his right to sue Allstate for failing to accept a

13  reasonable settlement.  Accordingly, Allstate offered Baglioni one

14  of the two options required by Blue Ridge - i.e. for Baglioni to

15  accept the settlement - as well as the third "optional" option

16  suggested by the concurrence - i.e. to continue defending Baglioni,

17  if he waived his right to later sue Allstate.  Allstate failed,

18  however, to offer Baglioni the second required option under Blue

19  Ridge - i.e. for Baglioni to assume his own defense.  For all the

20  reasons discussed, the court declines to read any exception into

21  Blue Ridge's requirement to expressly offer this option.

22  **IV.   CONCLUSION**

23      Accordingly, the court GRANTS the Motion to Dismiss, and

24  dismisses the entire matter with prejudice.

25  IT IS SO ORDERED.

26  Dated: March 2, 2012

27                                   DEAN D. PREGERSON

                                     United States District Judge

28